Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Thank you, Miss Trice. Welcome, counsel. You may have noticed that we're missing one judge. Judge Duncan had an emergency arise this morning, and he requested that we go ahead and proceed with the oral argument. And he assured us that he will listen to the audio of the oral argument and give full consideration to it. So you should have no worries about that part. Please remember that you are not to video or audio this proceeding. And also, when you are referring to the record, we appreciate a record site. And please remember that rebuttal is for rebuttal only. With that, I will call case number 20-20115, Harrison v. Klein Independent School District. And we'll begin with counsel for Miss Harrison. Good morning, Your Honor. I would both like I would like to thank the court and the justices in the court for being sympathetic and moving the schedule around to take care of some health concerns that I have. So I truly appreciate that. I also want to thank Mr Brush and well for being accommodating under these circumstances. This case is somewhat different than many other cases that I've had before this court. One is that we have oral argument before the district judge, Judge Ellison, which frankly is a rarity in this case. I want to spend a minute of my time talking about that because I think it's so important. In my years of experience, I've only had a few oral arguments on this positive motion. Very few. Judge Sparks in Yale and Austin, Judge Edgar in San Antonio, Judge Albright in Waco, Judge O'Connor in Fort Worth, and Judge Rosenthal, Bennett Hitcher in this case, Judge Ellison. It's a rarity. And as we go through this hearing today and as we look upon the record, because there's no order as well, right? There's not much he wrote about this, except distinctly to say that the case was decided upon deliberate indifference, which I'll speak about. And while not having a written order does make a difference, I don't think it really may hurt us in this particular case. But I do want to re-urge that as we go through this and if you choose to write on it, I would hope you appreciate some discussion about the need for oral argument in these cases. And in fact, we were before the Northern District about a year ago where everybody talked about how important it is to have these. A little bit about the case, of course, why we're here today. I want to start off talking a little bit about the young man, because I think it's important for us as we go through these cases to have a visual record or a visual idea of what the young man is like and what the environment is like. Because we're talking about what does it mean to be deliberately indifferent in a school, in a school for children with significant disabilities, and how to serve them with staff that are trained and sufficient number. So as the record reflects, this young man has what's called Angelin Syndrome, which is a genetic disorder. He has multiple disabilities, God bless him. Cerebral palsy, autism, and in previous terminology that we all understand, mental retardation. He has difficulty walking, he has difficulty communicating, he has difficulty going to the bathroom on his own. Counsel, I want to say to you that we very much respect that BF has a lot of issues and we are sorry for that and respect that a great deal. But I think that is not the issue in this case. Nobody's disputing that. The question is, you bring up specific incidents that occurred with the teacher and the assistant having done things to him. But the concern that I have is, for your side, is that the school almost immediately, as soon as they were made aware of it, did take action and those people are gone now. The bus driver was transferred to a different route. And so I'm not understanding, I'm putting aside the issue of having a permanent assistant or whatever. Just speaking to those events, what could the school have done differently than they did? They immediately investigated and immediately addressed it. What else could they have done? So, forgive me while I take a drink, because I kind of need to do that, so forgive me for a moment. So, most of the time, in fact all the time, when attorneys write about and respond to a motion for summary judgment or defendants write about it or courts write about it, we all say the same thing, that all the inferences are in order to the benefit of the plaintiff or the appellant, but it's rare that we actually discuss what those inferences are. And those inferences, in this case, answer your question exactly right. So, I'll give you an example of how I like to proceed. Also, very often in cases, we start chronologically from the beginning. I'm going to do something somewhat different. I'm going to start kind of in the middle. Because from the middle, we're going to be able to pick up what those inferences are and specifically address your question, what the school district was on notice to and what they could have done different, in fact, much different. So, I want to go to the incident that occurred on April 26th. That was where he reportedly bumped his head on a cabinet and left a small laceration on the side of his head and a nurse's note was completed. Mom took him to the emergency room. He was so traumatized that they put a dressing over his head with glue and wore it for a month. On the next day, mom went to the school, asked to see the video. School did their own investigation and this is what's relevant, John. The aide, Ms. Hernandez, who frankly has been somewhat demonized in this process and I'm not sure she deserves it. She admits and the record reflects that she was alone with nine students that day. She admits that she was trying by herself to keep all of them in line. She reported that the regular education teacher was with another student in the bathroom. She reported that things were chaotic that day. She reported that an oven had faded and quit. They hadn't replaced it. And then at that point, she was alone with the young man and the injury occurred. Now, why is that important? That's important because that tells us, kind of looping back to the very beginning of the story, when the art committee team is meeting to address what his needs are, that he needs to be in close proximity to a teacher. Now, I say this somewhat sarcastically. Obviously, at the time he was injured by these people, he was in close proximity to them, right? So it's satisfying that particular term. But I think we all know we need to look beyond the term. We need to visualize in the classroom what does it mean for a student like BF to be in a classroom with significantly disabled children and to have school, to have staff to take care of their needs and his needs. Now, at the original art committee meeting early that fall, they know he needs to be in close proximity because they recognize not only is he disabled, as everyone else in that classroom, they recognize that his disabilities are so much so that he needs to be in close observation of other people. And I think we need to read that to mean there has to be enough staff to take care of him. So as we go through... But if they didn't comply with their FAPE and all of that, that's a separate piece. That would have required you to exhaust and go through the administrative process and so forth. So the only thing you can be bringing is an ADA-type claim, not a FAPE-type claim, because that is a different category altogether. So if the problem is they didn't comply with their own, they said we're going to do X, and then they didn't do it, that's not where we're at here. Well, two points, Your Honor. If there was an exhaustion claim, and the school district made that at the district court level, and the judge somewhat summarily didn't want to discuss it, they certainly did not appeal that issue. And I would say based upon the recent Davis case that came out of the Supreme Court, I think it's too late for them to bring it up today. I would say it's way... On another hand... I'm just saying you can't bring this up now. I mean, you haven't said they didn't comply with their standard that they had set out. You're saying they discriminated. I mean, you brought an ADA claim. So if you now in the oral argument are going to turn it into something else, that's what I'm saying is the problem. I would respectfully, Your Honor, argue with you that, because what our argument is, and the terminology fits and the phraseology fits, is a reasonable accommodation. The reasonable accommodation that this young man had to have was staff. The reasonable accommodation he needed to have was sufficient staff. When his mother complained to the art committee that he needed a one-to-one, they refused and denied to respect that accommodation. A few months later, when he continued to be injured day in, day out, week in, week out, his father also brought up that he needed closer supervision and they didn't do it. So if you're asking, going back to your first question, what could they have done different, they could have given him a reasonable accommodation, which was one-to-one. Okay, let me ask you about that, because I do think that's the thing that's the most hard to understand. Yes, Your Honor. The rule is not every accommodation, because of course every disabled kid would love to have their own person follow them around all day and so forth. The question is reasonable accommodation. What is your best case site for the proposition that BF was entitled to have the school hire a separate assistant who would be solely driven on looking after him? Let me modify that somewhat differently. I'm not saying that they needed to have one solely for him. They needed to have someone sufficient to provide the accommodation that he was kept safe. Now, there was that Rideau case that the Kellogg ISD went back and forth from the district court to the Fifth Circuit twice. But one of the things that obviously he says is that school districts have a duty to keep kids safe in class and they have a duty to accommodate their needs. And one of the accommodations is clearly having enough staff to take care of them. Okay, so tell me how many staff they had and what should they have had. If you're not saying that he was entitled to his own personal assistant, you know, all day long, then what are the numbers that did exist and what are the numbers that should have existed and what case law supports that argument? Well, once again, give me a second on the case law. But in terms of the facts, this is once again where we go to the reasonable inferences from the facts. During the entire fall, he was not kept safe. During the early part of January, February, March, he was not kept safe. They had two incidents by the same, excuse me, by the same age within a month of each other. And after the first one, where it was readily observable that the young man was injured either at school or on the school bus, they did nothing. They did not adjust. So once again, under the ADA, when somebody has an accommodation that's needed and it's readily observable, there's a duty to act. And after the first incident, they surely had a duty to act, particularly, and once again, that the parents specifically asked for accommodations. Okay, but I'm asking for the specifics of that. I mean, you could have 10 teachers standing in the classroom and this young man could still fall, okay? That's the sad thing. He has a very difficult roadway for himself. So I'm asking you, what can you point to that's specific about, here's how many people they had, here's how many people they should have had, here's how that would make a difference. I'm having trouble with that beyond simply the concern that, you know, he has a difficult life. I understand, Your Honor, but I will say that to some extent, the line of questioning you're asking is exactly the point. There's contested issues of material fact on this point. To the extent there's contested issues of material fact on this point, it's not an issue of law that the judge should have decided. It's an issue that should go to a jury. Yeah, but I'm asking you to point to what are the allegations that would support that, okay? I mean, we still need to know what it is you're saying they needed. It can't just be some vague thing. You could have done better. You know, that's always true. Any accident that happens, you can almost always say, you could have done better. But that doesn't mean that that was a reasonable accommodation. You know, we understand that we use the Davis case for also part of the analysis about when a child gets injured in school, what do we have to show? We have to show that the child or the student with a disability, we know that. I think we can all agree that the injuries he experienced, what we call a hostile education environment, was severe and pervasive. We know that the school district was on notice. I know Mr. Brush is going to comment on that in a moment, but we know that the art committee knows, we know that the principal knew the kid was being injured. Parents complained, they asked for a one-to-one, so they're on notice. So the question becomes under that notice, under that prism of Davis, and we look at what our burden is or what the school district burden is, after those various complaints, after the parents asked for a specific accommodation, after some of the injuries were readily observable, the first ones in March, and the school district did nothing, once again, also under Davis, the one thing the school district can't do is nothing. So I would argue when we add and kind of merge together some of the standards we have under the ADA 504 and some of the standards we have under the deliberate indifference analysis, I would say that... Counsel, isn't the accommodation a collaborative effort between the school district and of course the teachers and the school personnel and the parents? Yes, you're absolutely right. Isn't that something that's dictated from the outside or dictated by what the parents solely desire for their child? Isn't that correct? Yes, you're correct, Your Honor. But also, once again, once a school district is on notice of being bullied or harassed, or on the other hand, that's a term that we use in our case as a hostile education environment, they have an independent duty to respond. Thank you. Okay, you've reserved some time for rebuttal. We'll now hear from Mr. Brush on behalf of the KISD. Good morning. May I please the court? My name is Jonathan Brush and I represent the Appalachia Client Independent School District. In my time before the court today, I will demonstrate why Judge Ellison properly dismissed these claims. I think the central issue opposing counsel was wrestling with is an interplay between a claim that was not brought and the ADA and the 504 statutes. As the court observed, there is not a claim before the court today under the Individuals with Disabilities Education Act, the IDEA. But opposing counsel referenced several times what the ARD Committee did. The ARD Committee, of course, is the Admission Review and Dismissal Committee that makes collaborative decisions for special education children. And part of that process involves school staff and the parents. The parents articulate what their needs are, the school staff responds, and the parties are supposed to come to an agreement. If they cannot, there is an administrative process that is available to the parents where they can file for a due process hearing and exhaust that claim. This case was never exhausted. I'm not arguing exhaustion because there's not an IDEA claim before the court, except for the fact that counsel is trying to morph an ADA 504 claim into an IDEA claim. The accommodations that BF is saying he needed, more staffing, are necessarily IDEA accommodations. They would be available under the IDEA because they go to his educational programming and his educational needs. How many staff he needs to accommodate his disability and access educational opportunities. Importantly, the discussions, and these are in the record in the Art Committee notes and deliberations, 636, 37, 661, 669, are discussions about falling and the use of a post. Are you saying that the concept of reasonable accommodation under the ADA can never be separate from the faith that's put together under the IDEA Act? No, Your Honor. They can be separated. There could be what I would call a pure access claim, an architectural barriers claim. So for instance, if the complaint of a disabled student did not relate to their education but merely related to I can't get to the playground because there's no ramp and I use a wheelchair or I use an assistive device to ambulate. That would be a pure facilities access claim and there is a request that the Art Committee should have granted additional staffing to accommodate his disabilities. Isn't that the claim he says you waived the exhaustion argument on by not raising in the district court? We did not raise the exhaustion argument in the district court until our summary judgment reply. I don't consider it necessarily even to address the waiver issue. One, the court would have to determine whether or not exhaustion is an issue of justiciability or not, which is an open question in this circuit. If it's a question of justiciability, then it cannot be waived and the court would address it now for the first time. But more fundamentally, plaintiff didn't bring an IDEA claim in this federal lawsuit. DF brought an ADA and 504 claim complaining of what he characterized as assaultive behavior. And in his complaint, and this is a record 130 and 136, he refers to the conduct of Ms. Hernandez and Ms. Gay as assault. And it's quite clear the claim sounded in assault because he brought individual claims against both of those former district employees, initially alleging constitutional violations to the right to bodily integrity and the characterization of the conduct was assault. But as we get into the other issues, so I understand the sort of incident issues, but then he also says that, you know, he wasn't being treated properly with his urine situation, that he would have scratches and bruises randomly that were never explained. How does that not be an ADA problem? Because, I mean, going to the bathroom isn't specifically educational. I realize that it occurs at the school, but it's not specifically educational. So why isn't that an ADA claim that you didn't have a staff necessary to make sure that he could have appropriate handling of his toiletry? Certainly. So a couple of responses to that point. First, the record shows from Ms. Harrison's testimony that there was no complaint about the year of Frank Elementary School of Toileting. It related to the year of burn housing. Her testimony was that it happened on a few occasions and she could not say whether a BF had soiled his diaper on the way home from school or at school. She didn't know. Now, what the record also reflects is that there were complaints that were discussed by the ARB committee, and this is at 593. Again, those are part of the process that was discussed below. So even setting aside the IDEA, the reasonable accommodation, and I think your question, Judge Haynes, alluded to this, is it's not every accommodation, it's a reasonable accommodation. And the reasonable accommodation there would be that the district would see to his toileting needs and look after his toileting needs. The evidence is clear that they did do that. Now, the allegation was that on some occasions he came home with a soiled diaper. But equally, the testimony and the admission from Ms. Harrison was that she couldn't say where or when, which brings us back to the question of inference. She admitted in deposition it could have been on the bus. That's beyond the school's ability to respond. Okay, let me ask you this. If we assume arguendo that the reasonable accommodation argument being made here is properly being made under the ADA and 504 and all of that, not the FAPE and IDEA and all of that. Okay, if we assume that arguendo, what is a reasonable accommodation for someone like BF? Your opponent has conceded that it doesn't have to be an individually hired assistant that does nothing but work for BF. So then what did you all do to accommodate him? Let's just ask it that way. Certainly. And to address both of the problems, because I think responsive would be the question about toileting needs and also his ability to move about the school safely or not safely. We talked a little bit about the toileting needs, was that district staff would see to changing his diaper and respond to that. That's a reasonable accommodation. Is it always going to be successful? Probably not. Well, what about his argument that like Hernandez was by herself and that was part of what led to the incidental event? So it kind of swings back to was there enough staff? I mean, if we had, for example, one teacher and 300 first graders would probably wouldn't think that was sufficient. So I guess I'm trying to get at the core of this. What staff was there and what is sufficient? And what is necessary is dependent upon the individual student. And again, that's going to be a determination that's made during the IEP process under the IDEA. Factually here, Miss Hernandez was in the room with BF at the time of the first injury, the head injury. And the evidence is that the other staff, I believe was another paraprofessional and the regular education teacher, the teacher were out of the room at the time. Now. How did that happen? I can't speak to how it happened other than there are multiple students in a classroom and they have to attend to their needs. The only way it wouldn't happen is if the art committee had assigned a one to one full time staff accommodation. But that would be an accommodation under the IDEA. Now, what the district did do for ambulation. And again, this comes from the art committee notes is that he was provided a cart for transition time for ambulating through the hallways. And the citation for that would be. 636, 37 and 659. So the district did consider his needs for moving about the school to avoid incidental injuries because it's undisputed that BF has problems with ambulation and falls. So the provision of a cart and permitting him to use a cart was a reasonable accommodation that the district gave and that was used. Whether a cart was necessary in the classroom, though, would also have been dictated by the IDEA. But more fundamentally, though, that was an accommodation related to his difficulty ambulating. But we have to go back and look at the claim that the plaintiff brought and framed, not that he fell because he was having difficulty ambulating, but because he was assaulted. Accommodations typically go to the needs of the disability and not the assault. And along those lines, is there any, and this is just by way of background, is there any attempt? First of all, is there any attempt? And second of all, is there any requirement that you've identified for the school to evaluate personnel that are assigned to an individual such as this or to see what type of suitability before that accommodation is put in place? But as a matter of statutory law in Texas, teachers and paraprofessionals are certified and typically have a special education certification. As a matter of law, they're subjected to criminal background checks. There's nothing in the record that would suggest that the district failed in its obligation to do either of those things. This is an unfortunate situation where if we take plaintiff's allegations at face value, two separate district employees engaged in assaultive conduct in a school district, that they would do so. Tying it back to the, I think the overarching standard for the claim and what Judge Ellison dismissed the case on was the deliberate difference standard. The ADA and 504 don't require perfection and they certainly don't require that a school district give accommodations to prevent assault. But what about opposing counsel's argument that, you know, Hernandez was just pushed over the brink to some degree by this and whatever and she's there with all of these kids. Now I personally can't imagine justifying what she did, but that said, let's just take that argument. How do we assess that? And how often was somebody like Ms. Hernandez left alone with a bunch of kids in the room while the other people that were supposed to be there just disappeared? I think first the argument opposing counsel's making would have been alone with one student or, I'm sorry, one district employee or another. We simply don't know from the record whether... Is that something that needed to be in the record to raise a fact issue? Given the way the claim was pled, I don't think so because it was pled as an assault. Of course, BF is the master of his own pleadings. He pled an assault and he has to prove his claim that way. But as he's arguing it now and he's staffing and so forth and whatever, would that have needed to be shown to raise the fact issue? Let's say all the time they're supposed to have three people in the room and they usually only have one, for example. Let's say that somebody testified to that. That would raise a fact issue on that point, right? Correct. BF would have had the burden to put in evidence creating a fact question that the district was not meeting its obligation and was leaving BF alone or improperly supervised. Importantly, in the incident with Ms. Gay, the second incident, the slap on the leg, BF was not alone. The only time we're talking about alone was the second incident with Ms. Hernandez where she let go of him and he fell back into the cabin. So we would have evidence in the record to show that as a normal factor, the district wasn't leaving the child alone. The statute would also require that an appropriate person have knowledge of the failure. And under this court's precedent for purposes of imposing liability on school districts, that's typically going to have to be an administrator. And here it's undisputed that there was no administrator who had knowledge of any conduct that was assaultive in nature or that was hostile towards BF until after the report of the incident. Again, this comes down to, and is articulated in the brief to this court, a hostile educational environment for a young man. It's not a hostile educational environment because a young man with physical disabilities that make him prone to falling falls occasionally. I think the district court recognized that at oral argument. It's a hostile educational environment, and this is the crux of BF's claims, if district staff abuse him because of his disability. That's the real crux of the claim. And there was no evidence before the district court to show that an appropriate person responded in anything less than textbook fashion when it did learn of what had happened to BF on each incident, both with respect to Hernandez, Gay, and also the bus driver, which the court alluded briefly to the issue of the bus driver, and there the evidence was undisputed that when that was reported, the bus driver was reassigned. So I think here there is a void in the record that would have been plaintiff's burden to fill to create a fact question about staffing. Plaintiff took no steps to do that. There's no evidence to suggest. So you don't think we can infer from the fact that Hernandez was alone on the head injury day that means there was a staffing issue because that's your opponent's argument? No, I don't think it would be a fair inference because opposing counsel conceded that there was another teacher who typically is present in that room, but who happened to be in another room with a student. Now, this would go back to, was BF entitled to have one-to-one supervision at all time? And that's an IDEA question, an IDEA determination. And there's no IDEA claim before the court. It really boils down to, this case I think boils down to whether the plaintiff fled below, which was a hostile environment based on assault, is the claim that he is trying to press now here in this court. Excuse me. The plaintiff cannot change the complaint from his pleadings to take what he pled affirmatively as an assault and obtain settlements from the individuals that is in the record based upon the assault allegations and then change it into a different kind of claim. There simply is no evidence in the record to support a viable accommodation claim because the record evidence shows that the district did take steps through the ARD committee process to provide accommodation for BF Cetaxia and his problems with ambulation. That would be the transitioning part. So there's a reasonable accommodation. The fact that he occasionally fell in spite of it doesn't mean that the reasonable accommodation wasn't offered. The district discharged its duty to make the offer, to provide it. And the real gravamen of plaintiff's complaint here was that these two district employees mistreated him. And that didn't have anything to do... It is. If we were to conclude that you all waived the exhaustion argument and that it can be waived. Let's just assume that arguendo for the moment. Was there anything in the discussion under the IDEA Act and in the FAPE context and all of that where they're meeting together as you say, where the parents were saying you're not doing what we're asking you to do or were they agreeing at those meetings? So the record does speak to that question. So there are discussions about BF's needs. And notably, there is no objection from the parents to the process. And when the court looks at those Art Committee documents, they have a place for the parent to lodge objection. They have a place for the parent to object. They may object during the process or they may articulate a need. But ultimately the Art Committee comes to a determination as to what is going to be offered. And at that point, the parents have an opportunity to object and there is no objection reflected and there was no due process request made. So the process, even setting aside the exhaustion issue and to be clear, I do not believe the district needs to argue exhaustion to prevail. The case is easily decided on the merits on deliberate indifference on each claim as the district court did. But the IDEA process is similar to the interactive process where the parties speak to each other, they try to come up with a resolution and then an offer is made. At this point, the parents accepted the accommodation by not lodging objection to what was offered. And that is not surprising because they were not concerned about assaultive behavior that had not happened yet. So the court can look at the record and those Art Committee documents, they do span a section of the record but BSIEP is found in particular at 636 and they continue on to 669 in the record. And the court can see the absence of an objection. So the opportunity to object was there. It's meant to be a collaborative process and the court can take it and it is the proper inference. So if we're considering that in the deliberate indifference context, your argument would be they didn't realize that there was an argument with the parents when they hadn't objected to the plan that they set out. That's certainly one way of phrasing it, absolutely. And of course, deliberate indifference is tied to actual knowledge of a harm or a risk. And if the district doesn't appreciate the actual knowledge, then they're not deliberately indifferent. But even more importantly, deliberate indifference does not dictate one course of action in most circumstances. It's based upon the knowledge that the school district has at the time of reasonable options. And so here, a reasonable option was providing a cart during transition time. It was a reasonable option to rely upon regular staffing. At no time during those discussions prior to the discovery of the purportedly assaultive conduct did the district have any reason to believe there was a risk of assault. So looking at those documents, we can see reasonable steps by the district which negate as a matter of law finding of deliberate indifference because the court would have to find and the plaintiff to ultimately prevail that the district intended to discriminate based on this young man's disabilities. And looking at the documentation from the art committee and looking at the district's responses, that's not a fair inference across the entire spectrum of the case where the district responded to concerns that were raised to it. That negates the finding of deliberate indifference. And the district court correctly decided the case on deliberate indifference grounds and this court should affirm. Thank you. Thank you, Mr. Serkeel. You have time for rebuttal. You're going to need to unmute, though. Oh, okay. Sorry. You did. You did. You're fine now. Oops. Okay. Mr. Serkeel, I think you pushed the wrong button. There you go. Now you're unmuted and we can see you. Go for it. No, because I needed my grandson here to help me with all this stuff. Okay. Part of the issue here if we're asking, did the school district have notice on risks of assault? Well, maybe the last one, certainly not the first. I guess the middle one would be a better term. The second one was with Fernandez. The issue is not whether they had notice of risk of assault to the young men. The issue is whether they are noticed that there was risk of injury and further injury to the young man. And from that vantage point, the question is absolutely yes, they were on notice. They were on notice at the beginning. They were on notice when it was brought up at the Art Committee, notwithstanding whether or not there was disagreement. Mother complained outside the Art Committee asking for a one-to-one. The problem is, I don't think anybody doubts that BF has issues that are different from, let's say, an ordinary child. We all understand that. We feel sympathy for that situation. But that said, that doesn't answer the issue of, okay, what do we do now? Because there's no way to 100 percent guarantee that BF will be totally fine and never fall, never have a scratch, never have a urinary situation. I mean, that's the unfortunate situation here. So what is it that shows there was deliberate indifference when you all didn't even object to the process the IDEA Act process and the FAPE and the ARC and all the different... A quick point. They did object when it was outside the Art Committee. They brought it up to the principal. Mother brought it up to the principal after a one-to-one. Father brought it up in February. The issue of your answering that question specifically is actually a legal answer under the Davis v. Monroe school district case, Your Honor. And it's very clear. They did nothing. The one thing they can't do is nothing. And they were unnoticed as the kid was getting injured throughout the fall. They were non-noticed that the kid was injured but that the parent, mom complained first, dad complained second. And let's talk about the first incident with Ms. Hernandez. They were clearly unnoticed with her then and they did nothing. And then they had the second incident. So even if arguably in best light... I thought they didn't figure out after they watched the video after the second incident. You're absolutely correct, Your Honor. But that goes exactly to my point. By the time this kid... If the vantage point is they knew who did the assault, Mr. Brush is right. But the vantage point is not from who did the assault. On the assault, the vantage point is the vantage point of the kid. He was being injured. They knew he was injured. He was severely injured after the first incident with Hernandez. And what Davis tells us is that they knew who did the assault. That's what the district did. Something else before I'm finished, Your Honor. By the way, if anyone has another question, I'd like to answer it before I get to my last minute. Okay. Reasonable accommodation for this man... Actually, let me strike that for a second. I want to go back to the issue from the beginning about this exhaustion issue. It's not that IDEA and ADA Flash 504 are mutually exclusive. I think ADA 504 incorporate the ADA, but you can't go to federal court to claim, make a claim based upon something related to discrimination based upon disability under either of those statutes. And we saw that in the state of Lantz where it's described quite a bit until you exhaust. So I want to address that issue here again. We would argue to the court that we've pled hostile education in the educational environment. It incorporates by reference anything and everything, including what it means to make sure a kid does not have a hostile education environment. Clearly, there's some significant facts in the pleadings and in the motion for summary judgment talking about not enough staffing that certainly is both explicit and certainly inferences can be made from that. I would ask that the court remand the case, grant or appeal, the court to remand the case or if need be, probably considering that a sui sponte was done in the Waco versus Stewart case, the court could have just sent it back for exhaustion on its own. And I would say that that's one thing you could do in this case as well. Thank you very much. I really, once again, appreciate being here today and appreciate the opportunity that you gave me. Maybe next year we'll do this live and be able to go to the mother's for breakfast afterwards. Right, Jonathan? Thank you. Well, thank you both, counsel. I think we are all hopeful for the day that we can be back in New Orleans for live oral arguments. But we appreciate you all coming virtually and making your presentation and the case is now under submission and you all are excused. Thank you.